UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


REGINA ALLEN,

               Plaintiff,          CASE NUMBER: 13-cv-14106
                                       HONORABLE VICTORIA A. ROBERTS

v.

COMMISSIONER OF
SOCIAL SECURITY,


               Defendant.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION: GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.    Introduction**

      Claimant Regina Allen ("Allen") appeals the Commissioner of Social Security's

denial of her application for Disability Insurance Benefits. The parties filed cross-motions

for summary judgment which the Court referred to Magistrate Judge Charles E. Binder.

      In a Report and Recommendation dated October 7, 2014, the Magistrate Judge

recommended the Commissioner's Motion for Summary Judgment be granted and that

Allen's Motion for Summary Judgment be denied. He says the Commissioner's decision

was within the range of discretion allowed by law and supported by substantial evidence.

      Allen says the Court should reject the Magistrate Judge's Report and

Recommendation, reverse and vacate the Commissioner's final decision, and remand to

the Commissioner for calculation and payment of benefits based upon application and

onset of disability dates. She says the Magistrate Judge: (1) erred in following the

defective credibility assessment of the Administrative Law Judge ("ALJ"); (2) erred in

concluding the hypothetical questions posed to the vocational expert accurately

described Allen's limitations; and, (3) erred in finding the ALJ's decision is supported by substantial evidence. The Commissioner did not respond.

The Court: (1) **ADOPTS** the Magistrate Judge's Report and Recommendation; (2) **GRANTS** the Commissioner's Motion for Summary Judgment; and, (3) **DENIES** Allen's Motion for Summary Judgment.

## II.    Framework for Disability Determinations

Under 42 U.S.C. § 423, a wage earner suffering from a disability is entitled to disability benefits. The act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The claimant bears the burden to prove entitlement to benefits. *Dice v. Comm'r of Soc. Sec.*, No. 12-CV-11784, 2013 WL 2155528, at *6 (E.D. Mich. Apr. 19, 2013). To determine if a person is disabled and eligible for benefits, the Commissioner uses a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that significantly limits . . . physical or mental ability to do basic work activities, benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Id.* (citing 20 C.F.R. § 404.1520.) For the first four steps, the claimant bears the burden to prove the severity of impairment and that it precludes the performance of work. *Spreeman v. Comm'r of Soc. Sec.*, No. 12-12641, 2013 WL 5212023, at *2 (E.D. Mich. Sept. 16, 2013). At the fifth step, the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant is qualified to perform despite impairment. *Id.* To meet this burden, the Commissioner's decision must be supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and mental impairments. *Id.*

## III.    Standards of Review

### A.    Reviewing Report and Recommendation

The district court must conduct a *de novo* review of those portions of the report and recommendation to which an objection has been made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify, in whole or in part, the recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1)(C). After completing a de novo review, there is no requirement that the district court articulate all of the reasons it rejects a party's objections. *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001).

### B.    Substantial Evidence

A person may seek judicial review of any final decision of the Commissioner of Social Security; however, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could also support the opposite conclusion. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). And, if the Commissioner's decision is supported by substantial evidence, it must stand, regardless of whether the court would resolve the disputed facts differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

"In determining whether the Secretary's factual findings are supported by substantial evidence, a court must examine the evidence in the record taken as a whole, and take into account whatever in the record fairly detracts from its weight." *Id.* (citations omitted). Thus, in reviewing the Commissioner's decision, the court may consider only the record that was before the ALJ, and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations. See, *id.*

### III.   Analysis

#### A.   Administrative Record

The ALJ sufficiently summarizes the administrative record and relevant medical records. The ALJ's summary is incorporated by reference here. The Court relies on additional facts and history where noted.

#### B.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Allen's claim and denied benefits at step five. The ALJ found "that Allen has moderate limitations in activities of daily living, moderate limitations in social functioning and moderate limitations in maintaining concentration, persistence in pace and that there have been no episodes of decompensation." (Doc. 18 at 22). The ALJ found Allen has the residual functional capacity to perform sedentary work and that she could perform jobs in

significant numbers in the national economy. Thus, Allen is not suffering from a disability under the Social Security Act.

### C.     Credibility Assessment

Allen says that the ALJ's credibility assessment is defective. She claims the ALJ inaccurately reported her daily activities and skewed her testimony as well as the written record.

A credibility determination must find support in the record and cannot be based solely on the ALJ's intangible or intuitive notions about an individual's credibility. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Whenever complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must consider and scrutinize the entire case record. The case record includes medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physician and others, as well as any other relevant evidence in the record. *Id.* Other relevant evidence can include "prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *5. "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers* 486 F.3d at 248.

The ALJ questions the severity and limitations of Allen's multiple personalities and mental health symptoms. The ALJ finds the treatment notes inconsistent with the severity of Allen's alleged pain and mental and physical limitations. For example, Allen underwent an initial Psycho-Social Assessment in October of 2010, with a limited license master social worker. Allen's presentation, affect, mood and behavior were

"unremarkable" and her "insight and judgment appeared good." Allen reported an onset of multiple personality symptoms at the age of twelve.

Two months later, in December of 2010, Allen underwent an initial psychiatric exam with Dr. Appel. She reported an onset of multiple personality symptoms at the age of ten. She reported a history of emotional, physical and sexual abuse from childhood. Allen denied a history of mental health treatment or psychiatric hospitalization. Dr. Appel diagnosed Allen with the following disorders: (1) bipolar I; (2) post-traumatic stress; (3) dissociative identity; and, (4) borderline personality.

The ALJ also noted that a year later, in December of 2011, Allen reported to a mental health treatment provider that she was "a different personality from her 'host,'" yet the treatment provider noted that Allen "was able to answer all questions coherently and she appears to have good insight into her life and personal life circumstances."

In February of 2012, Allen's treatment provider said she was "calm, pleasant, coherent, neatly groomed and dressed, affect full range, psychomotor [within normal limits]" and had "good rapport". She was also reported as "calm," even when otherwise noted to be "[exhibitionistic]" regarding her "multiples."

The ALJ also noted Allen's failure to seek medical examinations and consistent treatment. Allen claimed she did not have medical insurance but the record shows Allen had Medicaid during much of the relevant period. Beyond the severity of Allen's mental health and pain, are her capabilities and limitations in activities of daily life.

Allen says that the ALJ skewed certain of her activities, including: driving; washing laundry by hand; and, using a computer and cell phone. However, the record does not reflect misrepresentation; instead, it shows inconsistencies in Allen's testimony.

For instance, the record is inconsistent as to whether Allen prepares her own meals. Allen says that she does not cook because of the time it takes, but may cook a hot dog or rice, "something that can be cooked very quickly." Her son reports that she

eats only ice and candy bars. Further, she testified that she can slice cucumbers and eats those and carrots. The ALJ pointed out that Allen testified that she is trying to lose weight but she eats meals consisting mostly of chips and soda.

Allen also takes issue with the ALJ finding her able to "take care of her children" and says, in reality, they take care of her. In her May 25, 2011 Function Report Allen reported no problems with any of the listed personal care tasks, including bathing. However, in testimony before the ALJ she mentioned she needed assistance. Also, in Allen's initial Psycho-Social Assessment on October 13, 2010, she reported needing no assistance with activities of daily living ("ADL").

Allen argues, "that the daily activities cited by the ALJ in no way equate with or demonstrate the ability to satisfactorily perform work in a competitive work setting." Allen reminds the Court she need not "be completely helpless or bedridden to fall within the purview of the Social Security Act." *Walston v. Gardner*, 381 F.2d 580, 585 (6th Cir. 1967). In *Walston v. Gardner,* the court noted that an ability to perform simple functions such as driving, grocery shopping, washing dishes and floors does not necessarily indicate that the claimant possesses an ability to engage in substantial gainful activity. *Id.* at 586. Allen further cites case law from other circuits which caution against placing undue weight on ADLs.

The ALJ did not put undue weight on Allen's ADLs. In fact, the ALJ mentioned Allen's ADLs for a significantly different purpose: to point out inconsistencies between Allen's testimony and the record; and, to further strengthen his argument that Allen lacked credibility. The ALJ did not say that Allen is able to work solely because of her ADLs.

The ALJ also pointed out inconsistencies in Allen's description of her legal issues. She reported to Dr. Appel that she was on probation after attempting to receive a fraudulent prescription for a relative and had a history of a suspended driver's license for

tickets. Allen's explanations for picking up a fraudulent prescription of oxycontin vary in the record. At her hearing Allen testified no memory of picking up the prescription.

Allen also sought a prescription to avoid work commitments. In a session with Dr. Appel, the doctor reported that Allen sought a "p[rescription] to write [a] letter to get out of [her] Work One program, intense borderline defenses, neg[ative] aims."

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, despite this deferential standard, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Without exploring every instance where Allen's credibility is called into question, the Court finds that the ALJ properly considered the record in full in making his credibility determination; pointed out specific instances where the medical record did not support the severity of Allen's allegations of pain and mental and physical limitations; and, showed several inconsistencies between Allen's testimony and the record.

There is substantial evidence to support the ALJ's credibility determination.

### D.    Hypothetical Questions

Allen says the hypothetical questions posed to the vocational expert did not accurately account for her limitations. Specifically, Allen says the hypotheticals failed to include her moderate limitations and did not accurately portray her abilities and limitations. The Court disagrees.

"Although a hypothetical question need not incorporate a listing of the claimant's medical conditions, the vocational expert's testimony, to be reliable, must take into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.'" *Infantado v. Astrue*, 263 F. App'x 469, 476 (6th Cir. 2008). Chief among the limitations on the deferential standards — for reviewing ALJ decisions for claims of disability

benefits — is that all determinations be based upon the entire record. *Rogers*, 486 F.3d at 249. The Court finds the ALJ looked at the entire record, both the favorable and unfavorable parts; that the ALJ's decision to exclude elements of Allen's limitations were based upon credibility determinations grounded in the record; and, that there was substantial evidence for these findings.

Allen cites three cases from the Sixth Circuit in support of her argument. She argues that for a response to a hypothetical question to constitute substantial evidence, each element of the question must accurately describe her. *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). While the hypothetical questions must accurately describe her, the ALJ is given discretion on which limitations actually describe the plaintiff. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). This is because "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Id.*

Further, Allen says the court in *Noe v. Weinberger* requires the ALJ's hypothetical questions to precisely set out all of her impairments and limitations. *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). This requirement is not part of the *Noe* decision. Even so, only those impairments found to be credible are required to be included.

Allen lists her moderate limited abilities that were excluded from the hypothetical questions proposed to the vocational expert. She says the limitations listed "clearly adversely impact[ed] [her] ability to satisfactorily perform work activity on a consistent and satisfactory basis." While her list is compelling, it is not the duty of this Court to decide whether this list provides substantial evidence of a disability under 42 U.S.C. § 423. Instead, this Court is to consider whether the ALJ's findings were based on

substantial evidence. Further, it is the ALJ's decision to decide which of the disabilities are credible and, thus, ultimately included.

In determining that Allen had the residual capacity to perform work, the ALJ proposed a series of hypothetical questions to a vocational expert that were progressively more restrictive. However, Allen says that the ALJ should have included more of her moderately limited abilities. For example, Allen points out that the ALJ did not ask whether the hypothetical person needs to "make simple work-related decisions." Instead, the ALJ used language that the person should be "limited to low stress jobs" and would require a job with "no more than occasional decision making" and no more than "occasional changes in the work setting." (Tr. 45). Allen also says the ALJ did not include the requirement that she "interact appropriately with the general public." However, the ALJ included language that the person should have "no more than occasional interaction with the public and with coworkers" and, in a follow up hypothetical, included that the person "should have no more than brief, superficial interaction with the public and with coworkers." (Tr. 46).

It appears from the record that the reasons the ALJ did not use Allen's list of moderately limited abilities was because he either included the consideration in different language or was satisfied, based upon the entire record, that the limitation did not exist or was not credible. The Court finds no error with this approach.

## IV.    Conclusion

The ALJ's decision was supported by substantial evidence. The ALJ cites extensively to medical reports and the record, noting several examples and instances that call into question Allen's credibility. The ALJ's hypothetical questions to the vocational expert did not omit Allen's moderate limitations, and the formation of the hypothetical questions was grounded in the entire record.

For these reasons the Court: (1) **ADOPTS** the Magistrate Judge's Report and Recommendation; (2) **GRANTS** the Commissioner's Motion for Summary Judgment; and, (3) **DENIES** Allen's Motion for Summary Judgment.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 11, 2015

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 11, 2015.

s/Linda Vertriest
Deputy Clerk